UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                CRIMINAL DOCKET

VERSUS                                                  No. 10-329

MOSES LAWSON                                            SECTION "I"
MONTERIO WIGGINS

ORDER AND REASONS

Before the Court are motions[1] filed by defendants, Moses Lawson and Monterio Wiggins, to sever their trials from those of their co-defendants. The government opposes both motions.[2] For the following reasons, the motions are **DENIED**.

*BACKGROUND*

On January 27, 2012, Moses Lawson and Monterio Wiggins, along with ten other individuals, were charged in a twenty-two count third superseding indictment alleging numerous violations of the Racketeering Influenced Corrupt Organization ("RICO") Act, the Violent Crime in Aid of Racketeering Act, the Federal Gun Control Act, the Controlled Substances Act, and other federal criminal laws. The charges center on an alleged RICO conspiracy to participate in a criminal enterprise known as the "Harvey Hustlers," and its enforcement faction, the "Murder Squad." The third superseding indictment generally describes the conspiracy as follows:

> The "Harvey Hustlers" originated in the Harvey area of Jefferson Parish, Louisiana in the mid-1980s. Members of the organization "hustled" meaning they distributed illegal narcotics. The original goal of the Harvey hustlers was to make money from the sale of illegal narcotics.

---

[1] R. Doc. Nos. 321, 327.

[2] R. Doc. Nos. 346, 347.

1

The "Murder Squad," also referred to as "MS," is a neighborhood group composed primarily of individuals residing in the Harvey area of Jefferson Parish, Louisiana. The Murder Squad ("MS") is a faction of and part of the Harvey Hustlers organization. While they primarily operate on the Westbank of Jefferson Parish, members would conduct business in other parts of the Eastern District of Louisiana.

As time progressed, various members of the original Harvey Hustlers were arrested and/or imprisoned. Eventually, other members of the Harvey Hustlers took over in the early 2000s. The organization and its members sought to make money through the distribution of illegal narcotics, primarily cocaine hydrochloride (cocaine) and cocaine base (crack) and used violence to protect its turf. An unindicted co-conspirator hereinafter referred to as "D.W." led the organization beginning in the early 2000s. D.W. was the son of an original Harvey Hustler. D.W. provided his drug and money connections to the organization. D.W. maintained control over how drugs were distributed in the area and used other Harvey Hustler members as "muscle" for the organization to commit violent acts within the community.

Sometime in the last 2000s, several Harvey Hustler members disagreed with how D.W. ran the organization and formed the Murder Squad. The Murder Squad faction was not only interested in selling drugs, but also interested in committing acts of violence within the community. Despite their differences, the Murder Squad was dependant [sic] on the Harvey Hustlers for the majority of its drug and money supply, and in essence, the Murder Squad became the enforcement faction of the Harvey Hustlers.

The following defendants are alleged to have been members of the RICO conspiracy charged in Count 1 of the third superseding indictment: Melvin Hudson, a/k/a "Kane" a/k/a "Keenan," Jermaine Hudson, a/k/a "Fresh," Travis Hudson, Moses Lawson, a/k/a "Moes," Monterio Wiggins, a/k/a "Peedy," Roderick Wiggins, a/k/a "Chucky," a/k/a "Donald Carson," Dante Carson, a/k/a "Tae," Dwight Carson, a/k/a "Coobie," Torey Richardson, a/k/a "Toe," and Tedrick Reynard. Count 1 of the third superseding indictment lists 97 overt acts allegedly committed by various members of the Harvey Hustlers/Murder Squad in furtherance of the RICO conspiracy. Such acts include, among other things, murder, attempted murder, robbery,

assault, narcotics trafficking, and obstruction of justice. The remaining counts of the third superseding indictment charge the various defendants with committing other federal crimes through the same or similar conduct.

This matter is currently scheduled to proceed to trial on the charges against Melvin Hudson, Jermaine Hudson, Moses Lawson, Monterio Wiggins, and Tedrick Reynard.[3] Each is charged in Count 1 with participating in the RICO conspiracy in their respective roles. According to the third superseding indictment, Jermaine Hudson and Melvin Hudson were ranking members (lieutenants) of the Harvey Hustlers. They allegedly distributed narcotics to lower ranking members of the Harvey Hustlers and recruited other gang members to participate in murders in order to be accepted into the Murder Squad. Melvin Hudson was allegedly an "enforcer" or "head buster" for D.W. until his death in September 2010, at which time Jermaine Hudson and Melvin Hudson succeeded D.W. as the leaders of the organization. Moses Lawson, Monterio Wiggins, and Tedrick Reynard are alleged to have been soldiers in the organization who were responsible for, among other things, street level distribution of narcotics and acquisition of firearms.

In addition to the RICO conspiracy charged in Count 1, Melvin Hudson, Jermaine Hudson, Moses Lawson, Monterio Wiggins, and Tedrick Reynard are all charged in Count 2 with conspiracy to distribute and possess with intent to distribute cocaine base. Each is also charged in Count 5 with conspiracy to use and carry firearms, and to possess firearms in furtherance of a crime of violence and drug trafficking crimes.

---

[3] Tedrick Reynard has indicated that he intends to plead guilty. The remaining defendants have already pled guilty to various counts of the third superseding indictment or to a bill of information filed by the U.S. Attorney.

Melvin Hudson and Jermaine Hudson are charged in Count 3 with conspiracy to distribute and possess with intent to distribute cocaine hydrochloride. Melvin Hudson is charged individually, and with others, in Counts 4, 6, 15, 16, 17, and 18 with conspiracy to distribute and possess with intent to distribute marijuana, obstruction of justice, distribution of heroin, possession of a firearm by a felon, possession with intent to distribute cocaine base ("crack"), and possession of a firearm in furtherance of a drug trafficking offense.

Moses Lawson and Monterio Wiggins are charged together, and with others, in Counts 12, 13, and 14 with murder in aid of racketeering, and carrying and using firearms during and in relation to a crime of violence and a drug trafficking offenses. Moses Lawson is charged individually in Counts 7 and 8 with possession of a firearm by a felon, and possession of a stolen firearm. Monterio Wiggins is charged individually in Count 19 with possession of a firearm by a person under indictment.

Tedrick Reynard is charged individually in Counts 20 and 22 with distribution of cocaine base ("crack") and possession with intent to distribution cocaine base ("crack").

Moses Lawson and Monterio Wiggins filed their motions to sever on the ground that they will suffer substantial prejudice if they are tried alongside the remaining co-defendants. Moses Lawson and Monterio Wiggins contend that a joint trial will expose the jury to prejudicial evidence relating to co-defendants which would otherwise inadmissible as to them. Moses Lawson also contends that there is a possibility of antagonistic defenses. The government responds that Moses Lawson and Monterio Wiggins will suffer no specific or compelling prejudice as a result of any evidence introduced during a joint trial with other co-conspirators, and that any risk of prejudice may be cured by appropriate limiting instructions.

***STANDARD OF LAW***

Federal Rule of Criminal Procedure 14(a) authorizes this Court to grant a severance or to provide any other relief that justice requires when the joinder of defendants "appears to prejudice a defendant or the government." The U.S. Court of Appeals for the Fifth Circuit has explained that "the district court should grant a severance only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable determination of guilt or innocence." *United States v. Bermea*, 30 F.3d 1539, 1572 (5th Cir. 1997) (citing *Zafiro v. United States*, 506 U.S. 534, 113 S. Ct. 933, 938, 122 L. Ed. 2d 317 (1993)). "The federal judicial system evinces a preference for joint trials of defendants who are indicted together because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.' " *United States v. McRae*, ---F.3d---, 2012 WL 6554691, at *12 (5th Cir. Dec. 17, 2012) (quoting *Zafiro*, 506 U.S. at 537). "It is the rule, therefore, not the exception, that 'persons indicted together should be tried together, especially in conspiracy cases.' " *McRae*, 2012 WL 6554691, at *12 (quoting *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993)). "In deciding a motion for severance, the district court must balance the potential prejudice to the defendant against the public interest in joint trials where the case against each defendant arises from the same general transactions." *United States v. Berkowitz*, 662 F.2d 1127, 1132 (5th Cir. Unit B 1981). "When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539 (citing *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S. Ct. 1709, 95 L. Ed. 2d 176 (1987)). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro*, 506 U.S. at 541.

***DISCUSSION***

Both Moses Lawson and Monterio Wiggins contend that they will suffer prejudice from a joint trial in this matter which would likely encompass evidence of numerous instances of specific conduct by other co-defendants. They argue that it is highly likely that evidence admissible against a co-defendant, but inadmissible as to one (or both) of them, will be admitted into evidence at trial. Moses Lawson and Monterio Wiggins express particular concern with respect to the possibility that the government will attempt to introduce four instances of "other acts" evidence attributable to their co-defendants, including evidence that Melvin Hudson and Jermaine Hudson participated in the murder of D.W.

The Court notes that Moses Lawson and Monterio Wiggins are both charged in the third superseding indictment as having participated in the overarching RICO conspiracy as well as various controlled substances and firearms conspiracies. Although the jury will undoubtedly be exposed to evidence of criminal activity committed by their co-defendants in furtherance of these conspiracies, the Fifth Circuit has recognized that "[w]hile the district court must guard against undue prejudice, it need not protect conspirators from evidence of their confederates' acts in furtherance of their common illegal aim." *United States v. Posada-Rios*, 158 F.3d 832, 863 (5th Cir. 1998) (quoting *United States v. Manges*, 110 F.3d 1162, 1174-75 (5th Cir. 1997)). In fact, the Fifth Circuit has "rejected the argument that evidence of crimes committed by co-conspirators, including gruesome murders, suffices to establish prejudice." *United States v. Thompson*, No. 99-41007, 2001 WL 498430, at *4 (5th Cir. Apr. 9, 2001) (citing *Posada-Rios*, 158 F.3d at 863). A severance is not warranted to protect Moses Lawson and Monterio Wiggins against evidence that is intrinsic to the conspiracies charged in Counts 1, 2, and 5.

The Court also notes that a severance is not required simply because the trial will encompass evidence relating to the charges against some defendants but not others.[4] As the Fifth Circuit has recognized, "the mere presence of a spillover effect does not ordinarily warrant severance." *See Pofahl*, 990 F.2d at 1483; *see also Bermea*, 30 F.3d at 1573 (rejecting the argument that a defendant was prejudiced by admission of extrinsic offense evidence regarding other defendants). Moreover, any concern of quantitative disparity in the evidence is "clearly insufficient in itself to justify severance." *See Pofahl*, 990 F.2d at 1483 (quoting *United States v. Harrelson*, 754 F.2d 1153, 1175 (5th Cir. 1985)). This Court has ample means of preventing any prejudice that may result from the possibility of spillover in this case. *See also Posada-Rios*, 158 F.3d at 863-65 (identifying several steps that a district court may take to lessen the prejudice to individual defendants from a joint trial).

Moses Lawson raises the additional concern that he and Monterio Wiggins may present irreconcilably antagonistic defenses to the charge of murder in aid of racketeering. Although the third superseding indictment charges Moses Lawson, Monterio Wiggins, and others with at least two crimes relating to the murder of Reginald Francois, Moses Lawson does not state with any level of particularity how his defense at trial would be antagonistic to those of his co-defendants. To warrant a severance, antagonistic defenses "must be so diametrically opposed that 'the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his codefendant.'" *United States v. Daniels*, 281 F.3d 168, 177 (5th Cir. 2002) (quoting *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir.

---

[4] As it relates to their concerns regarding the admission of 404(b) evidence against co-defendants, the arguments raised in these motions assume that such evidence would actually be admitted at trial. The Court also notes that any *Bruton* concerns defendants may have harbored when filing this motion have been rendered moot by the fact that Dante Carson and Dwight Carson have pled guilty. The government has indicated that it no longer intends to use their statements at trial. *See* R. Doc. No. 359.

Unit B 1981)). "The conflict must concern the core or essence of a defense, not merely 'minor or peripheral matters.'" *Daniels*, 281 F.3d at 177 (quoting *Berkowitz*, 662 F.2d at 1134).

It is unclear at this time whether Moses Lawson's defense is sufficiently antagonistic with his co-defendants as to warrant a severance. However, even assuming that the defendants present mutually antagonistic defenses at trial, the U.S. Supreme Court has held that "[m]utually antagonistic defenses are not prejudicial *per se*." *Zafiro*, 506 U.S. at 538. "Even when such a conflict is present, giving rise to the risk of prejudice, the district court should take into account the public interests in judicial economy and the administration of justice served by joint trials and the possibility that limiting instructions or other less drastic measures will suffice to cure any risk of prejudice." *Daniels*, 281 F.3d at 177; *see also United States v. Matthews*, 178 F.3d 295, 299 (5th Cir.1999) ("Severance is not automatically required when co-defendants present mutually antagonistic defenses.").

In this case, the interest of judicial economy strongly supports maintaining a joint trial. The vast majority of the evidence relating to each of the remaining defendants will come from the same sources of proof. The government has indicated that it intends to present testimony from more than eighty witnesses, many of whom will be prisoners. The government estimates it will require three weeks to present its case at trial. The Fifth Circuit has recognized that such circumstances create "a significant logistical burden" which, in this case, would be tripled if both severance motions are granted. *See Daniels*, 281 F.3d at 178. Given the vague allegations of antagonistic defenses and the fact that this Court will appropriately instruct the jury to consider each defendant's case separately, the Court is satisfied at this time that any residual risk of prejudice would be outweighed by the interest of judicial economy. *See id.* Any further challenges to the joint trial in this case will be addressed at trial. *See Berkowitz*, 662 F.2d at 1132

("The district court has a continuing duty to monitor the entire trial for prejudice and to order severance if such prejudice does arise.").

*CONCLUSION*

For the foregoing reasons,

**IT IS ORDERED** that the motions to sever the trial of defendants, Moses Lawson and Monterio Wiggins, from those of their co-defendants are **DENIED**.

New Orleans, Louisiana, January 22, 2013.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**